# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NATIONAL ASSOCIATION OF THE DEAF
8630 Fenton Street, Suite 202
Silver Spring, MD 20910,

DERRICK FORD
c/o National Association of the Deaf
8630 Fenton Street, Suite 202
Silver Spring, MD 20910,

MATTHEW BONN
c/o National Association of the Deaf
8630 Fenton Street, Suite 202
Silver Spring, MD 20910,

        *Plaintiffs*,

       v.                                                           Civil Action No. 25-cv-1683

DONALD J. TRUMP, in his official capacity as
President of the United States,
1600 Pennsylvania Avenue NW
Washington, DC 20500,

EXECUTIVE OFFICE OF THE PRESIDENT
1600 Pennsylvania Avenue NW
Washington, DC 20500,

THE WHITE HOUSE OFFICE
1600 Pennsylvania Avenue NW
Washington, DC 20500,

OFFICE OF THE VICE PRESIDENT
1600 Pennsylvania Avenue NW
Washington, DC 20500,

SUSAN WILES
in her official capacity as White House
Chief of Staff,
1600 Pennsylvania Avenue NW
Washington, DC 20500,

KAROLINE LEAVITT,
in her official capacity as Press Secretary
to the President of the United States,
1600 Pennsylvania Avenue NW
Washington, DC 20500;

                    *Defendants.*

## **COMPLAINT**

1.      For four years, beginning in January 2021, the White House provided American
Sign Language ("ASL") interpreters for all public briefings, press conferences, and related events
by the President, the Vice President, and the White House Press Secretary.  The ASL interpreters
appeared on all of the White House's official communication channels, including the White House
website, YouTube, Facebook, and Twitter/X.  For the hundreds of thousands of deaf and hard of
hearing ("deaf") Americans who rely on ASL to communicate, the presence of ASL interpreters
gave them access to all White House briefings in real time.[1]

2.      For many deaf Americans, ASL is their primary and preferred language.  ASL is a
complete and complex language distinct from English.  It has its own vocabulary and rules for
grammar and syntax.  It is not simply English in hand signals.  Many deaf individuals cannot read
or understand written English.  Consequently, English closed captions are not an adequate
substitute for ASL interpretation.

3.      For these reasons, the only way many deaf individuals can meaningfully access the
White House's press briefings is through qualified ASL interpreters who appear on the screen
beside the speaker.

---

[1] Plaintiffs use the term "deaf" to refer to individuals with hearing levels or hearing loss that qualify
as disabilities under the Rehabilitation Act.  The phrase "deaf" includes Deaf, DeafBlind,
DeafDisabled, Hard of Hearing, and Late Deafened individuals.

4. However, in January 2025, the White House inexplicably stopped using ASL interpreters for any of its public press briefings or similar events. Consequently, Defendants are now denying hundreds of thousands of deaf Americans meaningful access to the White House's real-time communications on various issues of national and international import.

5. The White House's failure to provide qualified ASL interpreters during public briefings, press conferences, and related events is against the law. Federal law unequivocally prohibits discrimination against individuals with disabilities and requires them to have meaningful access to the federal government's programs and services. Failing to provide ASL interpreters deprives deaf people of meaningful access to the White House's press briefings.

6. In 2020, this Court agreed and entered a preliminary injunction requiring the White House to provide ASL interpretation for all of its press briefings related to COVID-19. *See Nat'l Ass'n of the Deaf v. Trump*, 486 F. Supp. 3d 45, 57-61 (D.D.C. 2020); Order, *Nat'l Ass'n of the Deaf v. Trump*, No. 20-cv-2107-JEB (D.D.C. Sept. 23, 2020), ECF No. 22. The Court found that closed captions did not provide meaningful access to White House press briefings for deaf persons who rely on ASL to communicate, and thus the National Association of the Deaf and several deaf persons had established a likelihood of success on the merits of their claim under federal law. The Court's reasoning applies equally here, where Plaintiffs are being actively denied access to all of the White House's press briefings.

7. Plaintiffs thus bring this action to vindicate their right to meaningful access to White House briefings and to compel Defendants to resume providing qualified ASL interpreters at all White House press briefings and related events.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law.

9.      Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201, 2202.

10.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2) and (e).  Defendants reside in the District of Columbia.  Further, a substantial part of Defendants' unlawful acts giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

11.     Plaintiff the National Association of the Deaf ("NAD") is the nation's premier civil rights organization of, by, and for deaf and hard of hearing individuals in the United States. Established in 1880 by deaf and hard of hearing leaders, the NAD is dedicated to preserving, protecting, and promoting the civil, human, and linguistic rights of the approximately 48 million deaf and hard of hearing people in the United States.  The NAD has associational standing to sue on behalf of its deaf and hard of hearing members because (i) the NAD's members have standing to sue in their own right, (ii) advocating on behalf of its members on this issue is germane to the NAD's mission of advocating for its members' civil, human, and linguistic rights, and (iii) none of the NAD's members is required to participate in this action because the NAD is seeking declaratory and injunctive relief and not an individualized remedy for its members.

12.     Plaintiff Derrick Ford is a 36-year-old deaf resident of Anderson, Indiana and a member of NAD.  He is a graduate of the Indiana Institute of the Deaf.  ASL is Mr. Ford's preferred and primary language.  He has significant difficulty reading and understanding English.  When he watches television, Mr. Ford has trouble understanding the closed captioning, especially when the content is complex.  Mr. Ford watched many White House press briefings from 2021 to 2024 on the White House's YouTube channel because an ASL interpreter was broadcast with the briefings. After the change in administration in January 2025, Mr. Ford tried to watch the White House's press briefings but the lack of ASL interpreters rendered him unable to understand much of what was being said, even with closed captioning.  Mr. Ford stopped watching in February 2025.  Mr.

Ford wants to resume watching the White House press briefings because he is concerned about missing information about executive orders; diversity, equity, and inclusion ("DEI"); Social Security; Medicare; the economy; and issues impacting Americans in general. Mr. Ford would resume watching White House press briefings if ASL interpreters were provided.

13.     Plaintiff Matthew Bonn (also known as Treean River) is a 48-year-old deaf resident of Germantown, Maryland and a member of NAD. Mr. Bonn has a certificate in Deaf Support Specialist from Southwest College for the Deaf and is currently attending Gallaudet University. ASL is Mr. Bonn's preferred and primary language. Mr. Bonn has significant difficulty reading and understanding English. He also has trouble understanding closed captioning on television, especially when the subject matter is complex. Mr. Bonn regularly watched White House press briefings from 2021 to 2024 on the White House's YouTube channel because there was an ASL interpreter broadcast with the briefings. After the change in administration in January 2025, Mr. Bonn tried to watch the White House's press briefings but because there were no ASL interpreters, he could not understand much of what was being discussed despite the closed captioning. He stopped trying to watch in February 2025. Mr. Bonn wants access to the White House press briefings restored because he wants information about the economy, Medicare and Medicaid changes, and executive orders on gender issues. Mr. Bonn would resume watching the White House press briefings if ASL interpreters were provided.

14.     Defendant Donald J. Trump is the President of the United States. He is sued in his official capacity.

15.     Defendant the Executive Office of the President ("EOP") "provide[s] the President with the support that he or she needs to govern effectively" and has responsibility for, among other things, "communicating the President's message to the American people." The Executive Branch,

https://trumpwhitehouse.archives.gov/about-the-white-house/the-executive-branch/ (last visited May 27, 2025).

16.    Defendant the White House Office is an agency within the EOP and has responsibility for, among other things, the White House's press briefings.

17.    Defendant Office of the Vice President is an agency within the EOP that supports Vice President J.D. Vance in his executive and legislative duties.

18.    Defendant Susan Wiles is the White House Chief of Staff and is responsible for, among other things, overseeing the EOP.  She is sued in her official capacity.

19.    Defendant Karoline Leavitt is Press Secretary to the President of the United States. She is sued in her official capacity.  As Press Secretary, Ms. Leavitt holds regular press briefings.

## FACTUAL ALLEGATIONS

### Deafness and American Sign Language

20.    More than 48 million deaf persons live in the United States.  For many of these individuals—at least several hundred thousand—ASL is their primary language, and English is, at best, a second language.  Many deaf persons know virtually no English.

21.    ASL is a complete and complex language distinct from English, with its own vocabulary and rules for grammar and syntax—it is not simply English on the hands.  These languages differ not only in the modalities in which they are expressed (auditory versus visual) but also in how words are formed, sentences are arranged, and questions are signaled.  Additionally, facial expressions play a significant grammatical role in ASL while in English facial expressions have only an affective role in communication.

22.    ASL has no widely used or standardized written component.  For several reasons, including early language deprivation, many deaf people have a very limited ability to read and

write in English.  Indeed, studies have shown that the median reading level for deaf adults is around grade four.  Many deaf Americans, therefore, cannot communicate via written English.

23.    Written English is not an effective means of communication for the many thousands of deaf individuals who have limited English capabilities, particularly for complex and important topics.

24.    Many deaf Americans who use ASL require qualified ASL interpreters to communicate with persons who can only communicate in a spoken language such as English.  The most effective interpretations are those provided by native ASL signers—that is, Certified Deaf Interpreters ("CDIs") (discussed below).  Such fluent and accurate interpretations are critical for deaf Americans, especially in times of great and frequent change.

**White House Press Briefings and Related Events**

25.    The White House Office, and in particular the White House Press Office and Press Secretary, are responsible for the public communications of the Administration.

26.    The President and the White House communicate with the public in various formats.  Press briefings conducted at the White House are one of the most common formats.  The Press Office generally convenes press briefings by notifying the reporters and networks covering the White House that a press briefing will occur.  During such briefings, the President, Vice President, Press Secretary, and other officials typically deliver remarks to members of the White House Press Corps.  Following those remarks, members of the Press Corps are often given an opportunity to ask questions about virtually any topic of interest.

27.    The frequency at which such briefings occur varies across presidential administrations.  Some administrations, however, deliver public briefings on an almost-daily basis.

28.     The Press Office permits members of the media and media outlets to attend and film the press briefings using television network video cameras.  The footage is pooled and shared among various networks.  Many of the nation's major news networks broadcast the White House briefings to a live national audience.

29.     Additionally, the White House Communications Agency films and broadcasts White House press briefings using its own video cameras and delivery apparatus.  The White House's broadcasts regularly appear on the White House's official communication channels, including YouTube, Facebook, and Twitter/X.

30.     In addition to press briefings conducted by the Press Secretary, President Trump has frequently delivered live remarks directly to Americans.  On February 11, 2025, for example, he spoke from the Oval Office to announce an executive order "aimed at cutting the size of the federal government."  *See* The White House, *President Trump Signs Executive Orders in the Oval Office, Feb. 11, 2025*, https://www.youtube.com/watch?v=L0f-ZAVOoPk (last visited May 27, 2025).  And on April 2, 2025, he delivered a speech from the White House Rose Garden to announce tariffs on most other countries.  *See* The White House, *President Trump Participates in the Make America Wealthy Again Event*, https://www.youtube.com/watch?v=yiTFPN6SZsU (last visited May 27, 2025).  These types of public briefings and remarks are also posted on the White House's official communication channels, including YouTube, Facebook, and Twitter/X.

**NAD's Past Efforts to Ensure the Provision of ASL Interpreters for White House Briefings**

31.     This is not the first time NAD has been forced to file suit to ensure deaf persons receive legally required access to White House press briefings.

32.     In March 2020, the White House began holding regular, televised briefings regarding the COVID-19 outbreak.  Even though governors, mayors, and other elected officials

across the country were providing ASL interpreters for their COVID-19 briefings, the White House refused to do so. Consequently, hundreds of thousands of deaf Americans were unable to receive this important information on health safety due to the lack of ASL interpreters.

33.    On August 3, 2020, NAD and five individual plaintiffs filed suit in this Court challenging the White House's failure to provide ASL interpretation of COVID-19 press briefings. *See* Compl., *Nat'l Ass'n of the Deaf v. Trump*, No. 20-cv-2107-JEB (D.D.C. Aug. 3, 2020), ECF No. 1. The plaintiffs alleged that the White House's failure to provide ASL interpretation violated Section 504 of the Rehabilitation Act of 1973 and the First Amendment of the United States Constitution. The plaintiffs also sought a preliminary injunction to compel the White House to provide live ASL interpretation of all public briefings concerning the COVID-19 pandemic. *See* Pls.' Mot. for Prelim. Inj., *Nat'l Ass'n of the Deaf v. Trump*, No. 20-cv-2107-JEB (D.D.C. Aug. 3, 2020), ECF No. 2.

34.    On September 9, 2020, this Court (Judge Boasberg) granted NAD's motion for a preliminary injunction. *Nat'l Ass'n of the Deaf v. Trump*, 486 F. Supp. 3d 45, 61 (D.D.C. 2020). The Court found that the plaintiffs were likely to succeed on the merits of their Rehabilitation Act claim, explaining that the White House's failure to provide ASL interpreters likely denied plaintiffs "meaningful access" to the administration's briefings and that "[c]losed captioning and transcripts" were not adequate or reasonable alternative accommodations. *Id.* at 57–58 (citation omitted). The Court further found that denying "timely access" to "critical information" was likely to cause plaintiffs to suffer irreparable harm. *Id.* at 58–59.

35.    The Court thus concluded that the plaintiffs were entitled to preliminary injunctive relief that would provide them with meaningful access to the White House's COVID-19 press briefings. *Id.* The Court ordered the White House to provide "a qualified ASL interpreter . . . for

all White House coronavirus briefings."  Order, *Nat'l Ass'n of the Deaf v. Trump*, No. 20-cv-2107-JEB (D.D.C. Sept. 23, 2020), ECF No. 22.  The order required that the interpreter appear in the live video feed.  *Id.*  The White House could accomplish that by locating the interpreter "physically near the speaker" or displaying the interpreter in a picture-in-picture video feed.  *Id.*

36.    The Court's order went into effect on October 1, 2020.  *Id.*  Thereafter, the White House began providing an ASL interpreter, in-frame, for all its COVID-19-related briefings.[2]

**The Biden Administration's Provision of ASL Interpreters**

37.    In early 2021, after the change in administration, the White House began providing in-frame, qualified ASL interpreters for *all* press briefings—not limited to just those addressing COVID-19—conducted by President Joseph Biden, Vice President Kamala Harris, the White House Press Secretary, and other key members of the administration.  The ASL interpreters were visible on the White House's official communication channels, including WH.gov/live, Facebook, Twitter/X, and YouTube.  The White House also used a team of hearing interpreters and Certified Deaf Interpreters ("CDIs") to interpret the briefings.

38.    CDIs are a type of qualified ASL interpreter.  They are individuals who are deaf or hard of hearing and who have demonstrated knowledge and understanding of interpretation, deafness, the Deaf community, and Deaf culture.  They have native or near-native fluency in ASL, and they undergo countless hours of specialized training.  Registry of Interpreters

---

[2] "In-frame" ASL interpretation refers to simultaneous sign language interpreting where the sign language interpreter is visible on screen beside the speaker.  This may be accomplished by placing the interpreter physically near the speaker, or by superimposing a live video feed of the interpreter into a frame that appears alongside the speaker, with the frame sized appropriately to allow deaf viewers to see and understand the interpretation.  Under either approach, the in-frame interpreter would be visible on televised broadcast and on streamed mobile devices.

for the Deaf, Inc., *Certified Deaf Interpreter Certification (CDI)*, https://rid.org/certification/available-certifications/ (last visited May 27, 2025).

39.     The White House provided the ASL interpreters via picture-in-picture technology, meaning the video feed of the interpreter was superimposed next to the video of the speaker.  This allowed the ASL interpreters to be physically located in a different location from the speaker at the press briefing.  Upon information and belief, the White House typically filmed the ASL interpreters (who was typically a CDI) while located in the White House or Eisenhower Executive Office Building and provided the interpreters with a live video and/or audio feed of the person speaking at the press briefing.  At other times, the ASL interpreters interpreted via Zoom.  The White House would then combine the video feed of the ASL interpreter with the video feed of the speaker at the press briefing via picture-in-picture technology, as follows:



40.     The White House's efforts were groundbreaking.  For the first time in history, deaf Americans who communicate via ASL had meaningful access to all White House briefings in real time.

41.     On April 26, 2021, the White House memorialized these efforts in an official policy memorandum entitled "Communication Services for People Who Are Deaf or Hard of Hearing at

Presidential Briefings" (the "Policy") (attached hereto as Exhibit A). The Policy reiterated the Biden administration's commitment to ensuring "accessibility for all Americans, including by ensuring effective communication at Presidential briefings with people who are Deaf or Hard of Hearing." Ex. A at 1.

42.    To achieve this, the Policy provided that "a qualified [ASL] interpreter" would be included at all "[b]riefings conducted by the President, Vice President, First Lady, Second Gentleman, or White House Press Secretary" as broadcast by the White House Communications Agency. *Id.* The Policy dictated that when the White House used picture-in-picture technology, it would "[i]nclude the video feed of the qualified ASL interpreter in the White House feed that is aired or uploaded on WH.gov; and [e]nsure that the video feed of the qualified ASL interpreter is also included in the video uploaded to the White House's social media pages." *Id*. at 2. The Policy also stated that the White House would "[p]rovide the video feed of the qualified ASL interpreter to television networks or the networks' pool feed for use in their live broadcasts." *Id*.

43.    In light of the White House's adoption of the Policy, NAD agreed to voluntarily dismiss its lawsuit. *See* Joint Stipulation of Dismissal with Prejudice, *Nat'l Ass'n of the Deaf v. Trump*, No. 20-cv-2107-JEB (D.D.C. Dec. 16, 2021), ECF No. 38.

44.    The White House successfully implemented this Policy for the remainder of President Biden's four-year term. An ASL interpreter thus appeared in hundreds (if not thousands) of hours of footage of White House press briefings, providing the deaf community with unprecedented and sustained meaningful access to the White House's public communications.

**The Trump Administration's Failure to Provide ASL Interpreters**

45.    Before President Biden's term ended, White House officials developed guidelines and best practices for providing ASL interpretation going forward.  As explained by Elsie Stecker, a CDI who served as an interpreter in the White House:

> [W]e've already developed guidelines and an internal structure for interpreting services, including how to make a request from vendors, along with specifications from them. We also developed an internal policy for ASL interpreting, along with best practices for large events where a CDI should be provided. We also developed best practices for press briefings and what we should expect from contractors and how we can support them. The guidelines are complete and it's "gold." The packet of information has been available since August and it includes everything needed to make [the White House's] events accessible for everyone.

The Daily Moth, Interview with Former White House CDI Elie Stecker, https://www.dailymoth.com/blog/interview-with-former-white-house-cdi-elsie-stecker (last visited May 27, 2025).

46.    The guidelines and best practices were consistent with positions articulated by other leading organizations.  The Registry of Interpreters for the Deaf, for example, emphasizes the importance of providing CDIs for press conferences.  Because CDIs are specialists who are able meet the diverse linguistic needs of a broader array of the Deaf community, they are the ones who are best able to convey critical information efficiently to deaf individuals.  *See* Registry of Interpreters for the Deaf, Inc., *RID Position Statement: CDIs at Press Conferences*, https://rid.org/rid-position-statement-cdis-at-press-conferences/ (last visited May 27, 2025).

47.    President Trump was sworn in for a second term on January 20, 2025.  Since that time, the White House has completely stopped providing ASL interpreters for White House press briefings.

48.     Press Secretary Leavitt has delivered at least twenty-six press conferences to members of the media.  President Trump has held numerous live events—with press in attendance—to announce new executive orders, address the American public alongside foreign heads of state, and reveal major shifts in domestic and international policy.

49.     On March 4, 2025, President Trump delivered a nationally televised address before a joint session of Congress.  This event was broadcast on major television networks and streamed on the White House YouTube channel.  No ASL interpreters were provided for this high-profile event.

50.     The White House has not provided an ASL interpreter for any of the aforementioned public briefings or events like them.  It is apparent that the White House is not complying with the Policy announced and followed by the prior administration.  It is also apparent that the White House does not follow any of the guidelines or best practices developed by knowledgeable White House officials.

51.     Following many of the White House's press briefings and related events, the White House has posted footage of those briefings to its official communications channels, such as its official channel on YouTube.  The posted videos do not contain any ASL interpreters.

52.     To be sure, some of the posted videos do contain English closed captions (though it appears that the closed captions are auto generated by YouTube without human editing or clean up).  Nevertheless, English closed captioning is not accessible to many deaf individuals, including those with even some knowledge of English.

53.     Tone is also often lost in written captions.  By contrast, an interpreter can convey the tone and context of a message through facial expressions, sign choice, and demeanor.

54.     Moreover, those deaf individuals with limited knowledge of English may misunderstand captions because they are relying on their knowledge of ASL—a wholly different language—to make sense of the English captions.

55.     Further, the provision of closed captioning frequently contains errors and omissions that make it difficult or impossible for deaf individuals to understand the information being conveyed, particularly if they are not fluent in English.

56.     Given all this, on January 31, 2025, NAD sent a letter (attached hereto as Exhibit B) to Defendant Susan Wiles "urg[ing] the White House to reinstate ASL interpretation services." Ex. B at 2.  NAD explained that "[a]ccess to White House press briefings is critical for all deaf and hard of hearing Americans, since it is the primary means by which the administration communicates important information to the public."  *Id.*  Moreover, NAD explained that— consistent with Judge Boasberg's 2020 opinion—providing ASL interpreters for White House press briefings was both "ethically imperative" and "legally mandated."  *Id.*  NAD requested that "the White House honor its commitment to accessibility by reinstating ASL interpreters for all relevant events."  *Id.*

57.     The White House has not responded to NAD's January 31, 2025 letter.

58.     Having received no response to its initial letter, on April 12, 2025, NAD sent a follow-up letter (attached hereto as Exhibit C) reiterating its request that the White House honor its initial commitment to accessibility and resume providing qualified ASL interpreters for all press briefings, press conferences, and related events.  Despite NAD's efforts, as of the date of this filing, the White House has not provided any substantive response to these requests, nor has the White House resumed providing ASL interpreters for its press briefings, press conferences, or related events.

59.     NAD has also received numerous complaints from deaf citizens who are unable to understand the Trump administration's briefings due to the lack of in-frame televised ASL interpretation.

60.     It remains as important as ever that all Americans have meaningful access to and are able to enjoy the benefits of timely information from the White House.  Such access allows Americans—both deaf and hearing—the equal opportunity to participate in American society.

61.     The White House's failure to provide qualified ASL interpreters (including CDIs) for its press briefings, press conferences, and related events broadcast by the White House to the public prevents Plaintiffs from accessing critical information in real time.  Without ASL interpreters, Plaintiffs must wait for secondary sources to interpret and relay this information, often with less accuracy and detail than through direct access to White House communications.

**COUNT ONE**
**<u>Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794</u>**
**(Declaratory and Injunctive Relief against Defendants EOP, the White House Office, and the Office of the Vice President)**

62.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

63.     Section 504 of the Rehabilitation Act provides in pertinent part that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any . . . program or activity conducted by any Executive agency."  29 U.S.C. § 794(a).

64.     Defendants EOP, the White House Office, and Office of the Vice President are "Executive agencies" within the meaning of 29 U.S.C. § 794(a).  *See* 29 U.S.C. § 794(a) (directing heads of agencies to promulgate regulations necessary to carry out the Rehabilitation Act);

Enforcement of Nondiscrimination on the Basis of Handicap in Federally Conducted Programs, 53 Fed. Reg. 25,872, 25,872 (July 8, 1988) (final rule requiring Federal Executive Agencies, including EOP, to operate all programs and services to ensure nondiscrimination against qualified individuals with disabilities); 3 C.F.R. Part 102 (codifying regulations); 7 Op. O.L.C. 110, 110, 114 (1983) ("The term 'Executive agency' as used in [Section] 504 must be construed broadly to include all government entities which are not within either the legislative or judicial branches."); *see also* 29 U.S.C. § 794(a); 3 C.F.R. § 102.103 (defining White House Office and Office of the Vice President as "agenc[ies]" for purposes of EOP regulations implementing Rehabilitation Act).

65.    Public briefings conducted by EOP, the White House Office, and the Office of the Vice President are all federally conducted programs or activities subject to Section 504 of the Rehabilitation Act.

66.    A disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 29 U.S.C. § 705(9)(B) (citing 42 U.S.C. § 12102(1)(A)).

67.    Deafness is a disability pursuant to 29 U.S.C. § 705(21)(A)(iii) and is a physical impairment that substantially limits the major life activities of hearing.

68.    Plaintiffs, who are deaf, are qualified individuals with a disability within the meaning of Section 504.

69.    Defendants' practice of refusing to provide ASL interpretation violates Section 504 by authorizing, or failing to forbid, actions that:

a.    Exclude from participation in, deny the benefits of, or otherwise subject individuals to discrimination under a program or activity conducted by an Executive Agency

on the basis of disability (or "handicap").    29 U.S.C. § 794(a); 3 C.F.R. § 102.130(a); *id.* § 102.149.

b.  Deny qualified individuals with disabilities (or "handicaps") the opportunity to participate in or benefit from the aid, benefit, or service.    3 C.F.R. § 102.130(b)(1)(i); *id.* § 102.149.

c.  Afford qualified individuals with disabilities (or "handicaps") an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded to others.  *Id.* § 102.130(b)(1)(ii).

d.  Provide a qualified individual with disabilities (or "handicaps") with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level achievement as that provided to others.  *Id.* § 102.130(b)(1)(iii).

e.  Provide different or separate aid, benefits, or services to individuals with handicaps or to any class of individuals with disabilities (or "handicaps") than is provided to others, where such action is not necessary to provide qualified individuals with disabilities (or "handicaps") with aid, benefits, or services that are as effective as those provide to others.  *Id.* § 102.130(b)(1)(iv).

f.  Otherwise limit a qualified individual with disabilities (or "handicaps") in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.  *Id.* § 102.130(b)(1)(vi); *id.* § 102.149.

70.  Defendants' practice of refusing to provide ASL interpretation further violates Section 504 by failing to comport with its own Communications requirements pursuant to 3 C.F.R. § 102.160 to:

18

a. Take appropriate steps to ensure effective communication with applicants, participants, personnel of other Federal entities, and members of the public. 3 C.F.R. § 102.160(a).

b. Furnish appropriate auxiliary aids where necessary to afford an individual with disabilities (or "handicaps") an equal opportunity to participate in, and enjoy the benefits of, a program or activity conducted by the agency. 3 C.F.R. § 102.160(a)(1).

c. In determining what type of auxiliary aid is necessary, give primary consideration to the requests of the individual with disabilities (or "handicaps"). 3 C.F.R. § 102.160(a)(1)(i).

71. As a result of Defendants' acts and omissions, NAD's members, Mr. Ford, and Mr. Bonn are excluded from participation in, denied the opportunity to participate in or benefit from, and denied the full benefits of the White House's briefings.

72. Providing ASL interpretation would not impose an undue financial or administrative burden on Defendants. Indeed, the White House successfully provided ASL interpretation for four years.

**COUNT TWO**
**<u>Violation of the First Amendment of the U.S. Constitution</u>**
**(Declaratory and Injunctive Relief against all Defendants)**

73. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

74. The First Amendment to the U.S. Constitution guarantees, among other things, "the freedom of speech."

75. The Supreme Court has held that the protection afforded by the First Amendment "is to the communication, to its source and to its recipients both." *Va. State Bd. of Pharmacy v.*

*Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976).  Thus, where one enjoys a right to speak, others hold a "reciprocal right to receive" that speech, which "may be asserted" in court. *Id.* at 757.

76.     This right to receive speech includes speech originating from Defendants, particularly where the speech is made available to the public but not to Plaintiffs and other deaf persons who rely on ASL to communicate.

77.     Defendants' refusal to provide in-frame, qualified ASL interpretation prevents Plaintiffs from accessing and receiving the communications provided by their elected representatives.

78.     Denying this access serves no legitimate or compelling need and is not rationally related or narrowly tailored to serve any government interest.

79.     Providing such access would not impose an undue financial or administrative burden on Defendants.  Again, the White House successfully provided ASL interpretation for four years.

80.     Further, depriving Plaintiffs of their right to receive speech from the Defendants also impinges on Plaintiffs' First Amendment right to "petition the Government for a redress of grievances."  Because Defendants are depriving Plaintiffs of speech from the President and other White House officials, Plaintiffs cannot fully know what to petition the government for.

81.     Accordingly, Defendants' refusal to provide in-frame, qualified ASL interpretation violates the First Amendment.

**COUNT THREE**
**Violation of the Fifth Amendment of the U.S. Constitution**
**(Declaratory and Injunctive Relief against all Defendants)**

82.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

83.     The Fifth Amendment to the U.S. Constitution guarantees, among other things, that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  This clause prohibits denial of equal protection of the laws when the violation is committed by federal government actors, including Defendants.

84.     The Constitution's guarantee of equal protection under the law protects against discrimination.  This guarantee is violated when government action treats a person or persons differently from others similarly situated and there is no rational basis for the difference in treatment.

85.     Further, when the government's disparate treatment of a person or persons impinges on a fundamental right, that government action is subject to strict scrutiny.

86.     Here, Defendants denied Plaintiffs equal protection under the law by treating them differently from others who were similarly situated (namely, hearing persons) and, on information and belief, Defendants did so intentionally.  Defendants carried out this discriminatory treatment by refusing to provide in-frame, qualified ASL interpretation at White House press briefings and similar events.

87.     Further, Defendants' actions impinge on Plaintiffs' fundamental rights under the First Amendment, including the right to receive speech and to petition the government for redress of grievances.

88.     Defendants' actions serve no legitimate or compelling need and are not rationally related or narrowly tailored to serve any government interest.  Nor do Defendants' actions survive strict scrutiny.

89.     Providing ASL interpretation at White House press briefings would not impose an undue financial or administrative burden on Defendants.  Again, the White House successfully provided ASL interpretation for four years.

90.     Accordingly, Defendants' refusal to provide in-frame, qualified ASL interpretation violates the Fifth Amendment.

**COUNT FOUR**
**Mandamus Relief**
**(Declaratory and Injunctive Relief against all Defendants)**

91.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

92.     The Rehabilitation Act provides Plaintiffs with a clear right to relief—namely, to not be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity conducted by any Executive agency solely by reason of disability.

93.     Defendants have a clear duty to act—namely, to provide Plaintiffs with meaningful access to the public benefits, programs, and services that they administer.  As it relates to White House's press briefings, this duty entails an obligation to provide live televised, in-frame, qualified ASL interpretation.  This duty is ministerial in nature.

94.     By failing to provide in-frame, qualified ASL interpretation, Defendants have violated their duties to Plaintiffs under the Rehabilitation Act.

95.     Thus, if the Court concludes that the Rehabilitation Act, First Amendment, and Fifth Amendment do not provide an adequate remedy to Plaintiffs, then there would be no other adequate remedy available to Plaintiffs, and Plaintiffs would be entitled to relief in the form of a writ of mandamus ordering Defendants to comply with the statutory duties imposed by the Rehabilitation Act.

## COUNT FIVE
### Non-statutory Review
### (Declaratory and Injunctive Relief against All Defendants)

96.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

97.     By failing to provide in-frame, qualified ASL interpretation, Defendants have violated their duties to Plaintiffs under the Rehabilitation Act and acted *ultra vires*.

98.     Thus, if the Court concludes that the Rehabilitation Act, First Amendment, and Fifth Amendment do not provide an adequate remedy to Plaintiffs, the Court should award relief under the doctrine of non-statutory review.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered against Defendants and that the Court grant the following:

a.  Preliminary and thereafter permanent injunctive relief requiring Defendants to:

    i.   Provide qualified ASL interpreters, including CDIs, at all White House press briefings, press conferences, and related events conducted by the President, Vice President, First Lady, Second Lady, or White House Press Secretary, for which the White House Press Office or the White House Office of the Press Secretary provide public notice of their occurrence before the event commences and that are captured by the White House Communications Agency ("WHCA") or other White House communication channels;

    ii.  Make the qualified ASL interpreter visible in the frame of all broadcasts by the WHCA or other White House communication channels, either by placing the interpreter physically near the speaker and including the interpreter in the footage shot, or by including a separate video feed of the interpreter using

picture-in-picture format, with the width of the interpreter feed constituting at least 33% of the full width of the screen;

    iii.   Provide the video feed of the qualified ASL interpreter to television networks or the networks' pool feed to enable use in their live broadcasts when using picture-in-picture format;

    iv.   Ensure that the qualified ASL interpreter is visible in all videos streamed on or uploaded to the White House's website and social media pages, including but not limited to, YouTube, Facebook, and Twitter/X.

b. Declaratory relief that Defendants have violated the Rehabilitation Act by failing to provide qualified ASL interpretation for all public briefings conducted by Defendants;

c. Declaratory relief that Defendants have violated the First and Fifth Amendments by failing to provide qualified ASL interpretation for all public briefings conducted by Defendants;

d. Order all Defendants, in the form of mandamus relief and/or under the doctrine of non-statutory review, to provide the injunctive relief described above;

e. Retain jurisdiction over this action to ensure Defendants' compliance with the mandates of Section 504 of the Rehabilitation Act, the First Amendment, and the Fifth Amendment;

f. Award Plaintiffs reasonable attorneys' fees and costs; and

g. Award such other relief as this Court deems just.

Dated: May 28, 2025

/s/ *Ian S. Hoffman*

Ian S. Hoffman (D.C. Bar No. 983419)
Alex E. Sirio (D.C. Bar No. 1724703)
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Fax: (202) 942-5999
ian.hoffman@arnoldporter.com
alex.sirio@arnoldporter.com

Caitlyn Lewis Kellerman**
ARNOLD & PORTER
  KAYE SCHOLER LLP
250 W 55th Street
New York, NY 10019
Telephone: (212) 836-7751
caitlyn.kellerman@arnoldporter.com

/s/ *Brittany Shrader*

Brittany Shrader**
Drake W. Darrah**
NAD Law and Advocacy Center
8630 Fenton Street, Suite 202
Silver Spring, MD 20910
Telephone: (301) 587-1788
Fax: (301) 587-1791
brittany.shrader@nad.org

**pro hac vice motion forthcoming*

*Counsel for Plaintiffs*