UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

NATIONAL ASSOCIATION OF THE DEAF, *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP, *et al.*,

*Defendants*.

Civil Action No. 25-cv-1683 (JEB)

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTION TO NOTICE OF RELATEDNESS UNDER LCvR 40.5**

This is a paradigmatic related case because it "involv[es] the same parties and relat[es] to the same subject matter" (LCvR 40.5(a)(4)) as a previously-dismissed case, *National Association of the Deaf v. Trump et al.*, No. 1:20-cv-2107 (D.D.C.) ("*NAD I*"). Indeed, this case involves the identical lead Plaintiff, five identical Defendants, four identical claims, multiple identical legal issues, multiple identical factual issues, and the nearly identical relief sought in *NAD I*. It also relates to the same subject matter: Defendants' refusal to provide American Sign Language ("ASL") interpreters at White House press briefings. This case thus fits both the letter and spirit of the rule and recognizing this case's relatedness to *NAD I* will promote judicial economy. Randomly reassigning this case would undermine the purpose of the assignment rules as a whole. While Defendants point to a handful of differences between the present case and *NAD I*, they are marginal and immaterial and do not render these cases unrelated. Defendants' objection to the Notice of Relatedness should be denied.

### A.   This Case Involves the Same Parties as *NAD I*

This is a case "involving the same parties" as *NAD I*. The National Association of the Deaf ("NAD") was the lead plaintiff in *NAD I* and is the lead plaintiff here. All five defendants in *NAD*

1

*I* are also defendants here. This case thus "involv[es] the same parties" and satisfies this element of LCvR 40.5(a)(4).

Defendants argue that, despite this substantial overlap of identical parties, the addition of one new defendant and two new plaintiffs in this case renders it unrelated to *NAD I*. Not so. In Defendants' view, "involving the same parties" means that both actions must involve an "identical" set of plaintiffs and an "identical" set of defendants, with absolutely no variation (addition or subtraction) between the two cases. *See* Defendants' Obj. to Notice of Relatedness ("Obj.") at 2-3, Dkt. No. 7. But this stretches the plain language of Local Rule 40.5(a)(4) past its breaking point. And at least one court within this District has questioned that interpretation. In *Klayman v. Porter*, Judge Moss observed that "[o]ne can imagine scenarios in which enforcing such a strict interpretation of Local Rule 40.5(a)(4) would erode, rather than promote, the goals of the random assignment rule: for instance, where the substance of two cases is nearly identical but the named defendants can be easily substituted." 2021 WL 1668067, at *2 n. 1 (D.D.C. Apr. 28, 2021). This case presents just such a scenario.

The substance of this case is "nearly identical" to *NAD I*, and the additional parties here do not raise any legal or factual issues materially different than those presented in *NAD I*. For example, the new defendant in this case (the White House Chief of Staff) is simply the head of an executive agency that *was* named in *NAD I* (the Executive Office of the President) and also is named again here. The White House Chief of Staff was added here for completeness and to avoid any potential alleged pleading defects. There are no peculiar allegations or factual or legal issues pertaining to this new defendant. This scenario is strikingly similar to the example cited by Judge Moss in *Klayman* to explain a more flexible interpretation of the rule—naming "the Secretary of Interior [an agency head] versus the Department of Interior [the agency itself]." *Klayman*, 2021

WL 1668067, at *2, n.1. So too here: adding the head of an executive agency that was named in *NAD I* and is also named here does not make the two cases unrelated; it *confirms* their relatedness.

The same goes for the two additional plaintiffs in this case, who are identically situated as the individual plaintiffs in *NAD I* not present here. Like the individual plaintiffs in *NAD I*, the two new plaintiffs are deaf persons who (a) use ASL to communicate, (b) want meaningful access to the White House's press briefings, and (c) cannot meaningfully access those press briefings without ASL interpretation, including because they have a limited ability to read and understand English closed captions. Complaint ¶¶ 12-13, Dkt. No. 1 ("Compl."); Decl. of Derrick Ford ¶¶ 2-3, 5-6, Dkt. No. 2-2; Decl. of Matthew Bonn ¶¶ 2-3, 5-6, Dkt. No. 2-3. The new individual plaintiffs thus present the same legal and factual issues as the individual plaintiffs in *NAD I*. *Nat'l Ass'n of the Deaf v. Trump*, 486 F. Supp. 3d 45, 49-50, 57-58 (D.D.C. 2020).

Moreover, Plaintiff NAD's associational standing covers thousands of additional deaf persons who share these same common characteristics, and NAD was the lead plaintiff in *NAD I* and is the lead plaintiff here. Compl. ¶ 11; Decl. of Kelby N. Brick ¶¶ 2-6, Dkt. No. 2-5; *see also Travelers United, Inc. v. Hyatt Hotels Corp.*, 761 F. Supp. 3d 97, 117 (D.D.C. 2025) (associational standing is "always available to a voluntary membership organization with identifiable members that represents its members in good faith" (citations omitted and cleaned up)). It is thus unsurprising that this Court's preliminary injunction ruling in *NAD I* did not hinge on factual issues peculiar to any of the individual plaintiffs in that case. Instead, it focused on common characteristics across many persons in the deaf community, including a reliance on ASL and an inability to read and understand English. *Nat'l Ass'n of the Deaf*, 486 F. Supp. 3d at 49-50, 57-58. Because the two new plaintiffs share these same characteristics, their addition to this case does not render it unrelated to *NAD I*; again, it *confirms* their relatedness.

3

The decisions cited by Defendants are also distinguishable because they involved much greater variation in parties (and issues) between the two cases than is present here. For example, in *Dale v. Exec. Off. of President*, the single plaintiff in the later-filed action was "clearly not the same party as the *hundreds of plaintiffs* involved in" the earlier-filed case. 121 F. Supp. 2d 35, 37 (D.D.C. 2000) (emphasis added). Similarly, in *Judicial Watch, Inc. v. Rossotti*, the earlier case named the IRS, FBI, and Executive Office of the President as defendants, while the later case named an IRS Commissioner, 11 different IRS offices, a Treasury Inspector General, and three different divisions of DOJ as defendants. 2002 WL 31100839, at *1 (D.D.C. Aug. 2, 2002). Finally, in *Wilderness Society v. Bernhardt*, the plaintiffs in the later-filed case added a new challenge to *different conduct* carried out by a *different set of defendants* that were not present in the earlier case. *See* 2020 WL 2849635, at *2 (D.D.C. June 2, 2020); *see also Wash. All. of Tech. Workers v. DHS*, 2016 WL 11184186, at *2 (D.D.C. June 24, 2016) (finding cases unrelated where they involved two different DHS programs and "numerous issues are unique to one case or the other"). Here, by contrast, this case involves substantially identical parties and the same type of alleged misconduct in *NAD I*; the few party differences are immaterial.

### B.     This Case Relates to the Same Subject Matter as *NAD I*

This is also a case "relating to the same subject matter" as *NAD I*—namely, Defendants' refusal to provide ASL interpreters at White House press briefings. Both cases are premised on the notion that deaf Americans are entitled to know what the President and other White House officials are saying to the public in real time. *Nat'l Ass'n of the Deaf*, 486 F. Supp. 3d at 57-58; Compl. ¶¶ 5, 7, 60-61. In both cases, the plaintiffs allege that by refusing to provide ASL interpreters at White House briefings, Defendants are denying those deaf Americans who rely on ASL meaningful access to those briefings in violation of the law. Compl. ¶¶ 6-7, 56, 62, *NAD I*,

No. 20-cv-2107-JEB (D.D.C. Aug. 3, 2020), Dkt. No. 1 ("*NAD I* Compl."); Compl. ¶¶ 4, 7, 61, 71. In both cases, the plaintiffs assert claims based on the Rehabilitation Act, the First Amendment, mandamus, and non-statutory review. *NAD I* Compl. ¶¶ 14-19; Compl. ¶¶ 16-20, 22-23. And, in both cases, the plaintiffs seek injunctive and declaratory relief compelling Defendants to provide ASL interpreters at White House press briefings. *NAD I* Compl. ¶¶ 19-20; Compl. ¶¶ 23-34. This case plainly "relat[es] to the same subject matter" in *NAD I*.

Defendants point to a few discrete differences between this case and *NAD I*, none of which are significant enough to render this case unrelated to the subject matter of *NAD I*. Defendants first note that this case involves one additional claim not present in *NAD I*—violation of the Fifth Amendment Equal Protection clause. Obj. at 3. But that single new claim is based on the same facts and circumstances as Plaintiffs' other claims, and it overlaps significantly with the claims that *were* asserted in *NAD I*, including the First Amendment claim. *See* Compl. ¶¶ 85, 87 (alleging Defendants' disparate treatment of Plaintiffs in violation of the Fifth Amendment impinged on Plaintiffs' fundamental rights under the First Amendment). Plaintiffs also are not seeking preliminary injunctive relief on their new Equal Protection claim. Put simply, adding one new claim against the same set of Defendants based on the same type of underlying conduct does not make this case unrelated to *NAD I*.

Defendants next point out that *NAD I* addressed ASL interpretation at White House press briefings related to the COVID-19 pandemic, while the present suit demands ASL interpretation at *all* White House press briefings, consistent with the White House's policy and practice from January 2021 to January 2025. Obj. at 3-4. But the scope of relief sought need not be identical between the two cases in order for them to be considered related, and Defendants do not argue as much. Although the present case seeks ASL interpretation at more White House press briefings

5

than were at issue in *NAD I*, the relief sought is still based on the same claims and legal theories that were presented in *NAD I*. Moreover, both cases seek meaningful access to White House press briefings on matters of national and international importance. Just as the White House's remarks on COVID-19 and its impact on public health, safety, and the economy in *NAD I* were matters of national concern—that deaf persons are entitled to access in real time—so too are the current White House's remarks on Medicaid, Medicare, Social Security, tariffs, and travel bans. Thus, this case still "relat[es] to the same subject matter" as *NAD I*.

Defendants also point to "an alleged policy that began under the previous administration of providing ASL interpreters," and suggest that that policy makes this case unrelated to *NAD I*. Obj. 4. That is incorrect. That policy was implemented by the White House in direct response to *NAD I*. It was memorialized in an April 26, 2021 memorandum, *see* Dkt. No. 2-7—while *NAD I* was still pending—and much of the policy's content was based on this Court's preliminary injunction order issued in *NAD I*. *Compare id. with Nat'l Ass'n of the Deaf v. Trump*, No. CV 20-2107 (JEB), 2020 WL 5757463, at *1 (D.D.C. Sept. 23, 2020), *NAD I*, No. 20-cv-2107-JEB (D.D.C. Sept. 23, 2020), Dkt. No. 22. Further, the parties' settlement agreement in *NAD I* recited the implementation of the policy as one of the factors leading to the settlement. *See* Settlement Agreement and Release (attached as Exhibit A) at 2-4; *see also* Joint Status Report, *NAD I*, No. 20-cv-2107-JEB (D.D.C. Apr. 30, 2021), Dkt. No. 31 (reporting implementation of the policy to the court in *NAD I*). Moreover, the policy makes this case simpler than *NAD I* because it demonstrates the feasibility of providing ASL interpreters at White House press briefings—evidence that was not available when *NAD I* was filed. Accordingly, given the policy's connection to *NAD I*, the present case's allegations regarding that policy *confirm* that this case is "relat[ed] to the same subject matter" as *NAD I*.

6

### C. Judicial Economy Favors the Court's Retention of this Case

"In some cases . . . the interests of judicial economy served by the related case rule, Local Civil Rule 40.5, outweigh the fundamental interests served by the random assignment rule." *Doe v. Von Eschenbach*, 2007 WL 1655881, at *1 (D.D.C. June 7, 2007). This is such a case. Here, there is overwhelming legal, factual, and procedural overlap between the two cases. For example, in ruling on Plaintiffs' preliminary injunction motion in *NAD I*, the Court already considered the following issues (among others), each of which is also presented here:

- Whether Section 504 of the Rehabilitation Act provides Plaintiffs with an implied cause of action to seek injunctive relief against Defendants (it does), *Nat'l Ass'n of the Deaf*, 486 F. Supp. 3d at 53-57;

- Whether closed captioning provides meaningful access to deaf individuals whose primary and preferred language is ASL (it does not), *id.* at 57-58;

- Whether being denied timely access to information about "health and safety . . . [and] updates on the economy" is of "such imminence that there is a clear and present need for equitable relief to prevent irreparable harm" (it is), *id.* at 58-59; and

- The appropriate scope of injunctive relief, including whether and how Defendants can provide picture-in-picture ASL interpretation via their official communication channels to the public (they can), *id.* at 59-61; *see also Nat'l Ass'n of the Deaf*, 2020 WL 5757463, at *1; *NAD I*, No. 20-cv-2107-JEB (D.D.C. Sept. 23, 2020), Dkt. No. 22. Indeed, in *NAD I*, the Court ordered supplemental briefing and conducted a stand-alone hearing to address the precise contours of the injunctive relief to be ordered against the Defendants in *NAD I*. *See Nat'l Ass'n of the Deaf*,

7

>486 F. Supp. 3d at 60; *see also* Tr. of Video Mot. Hearing, *NAD I*, No. 20-cv-2107-JEB (D.D.C. Oct. 6, 2020), Dkt. No. 23.

Judicial economy would thus be promoted by allowing this Court to utilize its experience and familiarity with the same issues presented in this case, rather than requiring another judge to start from scratch.

### D.   The Court Should Exercise Its Discretion to Retain this Case

Finally, even if the Court determines that this case presents a close question for relatedness—and Plaintiffs respectfully submit that it does not—the Court still has discretion to retain the case. *See* LCvR 40.5(c)(1) ("If a judge who is assigned a case under this procedure determines that the cases in question are not related, the judge *may transfer* the new case to the Calendar and Case Management Committee." (emphasis added)); *A.M.P.V. by & through next friend Aguayo v. Barr*, 2020 WL 2079433, at *3 (D.D.C. Apr. 30, 2020) (Moss, J.) (describing finding of related cases after Department of Justice had "not[ed] that the question was a close one *within the Court's discretion* to decide either way" (emphasis added)); *cf. K.O. v. U.S. Immigr. & Customs Enf't*, 468 F. Supp. 3d 350, 361 (D.D.C. 2020) (Contreras, J.) (interpreting "may transfer" language in Local Civil Rule 40.5(c)(2) as meaning it is "up to the discretion of the judge with the later-assigned case"). Here, given the Court's familiarity with the subject matter and the legal and factual issues presented in *NAD I* and the present case, Plaintiffs respectfully request that the Court exercise its discretion to retain this case.

The Court should overrule Defendants' objection to the related case designation and maintain the current case assignment.

Dated: June 5, 2025 /s/ *Ian S. Hoffman*
Ian S. Hoffman (D.C. Bar No. 983419)
Alex E. Sirio (D.C. Bar No. 1724703)
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Fax: (202) 942-5999
ian.hoffman@arnoldporter.com
alex.sirio@arnoldporter.com

Caitlyn Lewis Kellerman*
ARNOLD & PORTER
KAYE SCHOLER LLP
250 W 55th Street
New York, NY 10019
Telephone: (212) 836-7751
caitlyn.kellerman@arnoldporter.com


/s/ *Brittany Shrader*
Brittany Shrader**
Drake W. Darrah**
Alexander S. Van Hook**
NAD Law and Advocacy Center
86 30 Fenton Street, Suite 820
Silver Spring, MD 20910
Telephone: (301) 587-1788
Fax: (301) 587-1791
brittany.shrader@nad.org

*pro hac vice motion forthcoming*
**admitted pro hac vice*

*Counsel for Plaintiffs*

9