UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL ASSOCIATION OF THE
DEAF, *et al.*,

          *Plaintiffs*,

v.

DONALD J. TRUMP, *et al.*,

          *Defendants*.

Civil Action No. 1:25-cv-1683-AHA

**PLAINTIFFS' RESPONSE TO ENJOINED DEFENDANTS' NOVEMBER 7 NOTICE REGARDING THE PRELIMINARY INJUNCTION**

Pursuant to the Court's Minute Order of November 7, 2025, Plaintiffs the National Association of the Deaf ("NAD") and Derrick Ford hereby respond to the "Enjoined Defendants' Notice of Compliance with the Court's Preliminary Injunction Order" (the "Notice"), ECF 32.

The White House has not yet complied with the preliminary injunction and instead seeks to add new limitations to the Court's order—under the guise of "interpretation[s]"—that would perpetuate the irreparable harm the injunction is designed to prevent. The White House's proposed limitations are not supported by the record or the law and the Court should reject them.[1]

I. **The White House Is Not In Compliance With The Injunction**

Although labeled as a "Notice of Compliance," the White House is not yet in compliance with the preliminary injunction. On November 4, 2025, the Court ordered the White House to "immediately begin" providing American Sign Language ("ASL") interpretation at press briefings. ECF 29 at 25. But the White House has not yet done so, despite the fact that a "blanket

---

[1] In this response, and for consistency with the Notice (ECF 32), Plaintiffs use "the White House" to refer collectively to the enjoined Defendants: the Executive Office of the President, the White House Office, the White House Chief of Staff, and the White House Press Secretary.

1

purchase agreement" for interpretive services is already in place. ECF 32 ¶ 2. For example, on November 6, 2025, the President formally addressed press that were assembled in the Oval Office, gave remarks on drug pricing, and answered press questions for approximately 27 minutes. No ASL interpreter was provided for this event. *See* The White House, *President Trump Makes an Announcement*, Nov. 6, 2025, https://www.youtube.com/watch?v=oh3VhNzivS8 (last accessed Nov. 10, 2025). Further, in its Notice, the White House states that it is "working to establish a publicly accessible channel showing ASL interpretation," but does not provide any details about that channel or state when it will become available. ECF 32 ¶ 2.[2]

## II. The Injunction Covers All Publicly Announced Press Briefings, Including Those Scheduled With Less Than 24 Hours' Notice

In its Notice, the White House attempts to limit the preliminary injunction by stating its "understand[ing]" that the order does not require the White House to provide ASL interpreters for "events scheduled with less than 24 hours' notice, such as briefings held in response to emergency developments." ECF 32 ¶ 3. There is no indication the Court intended such a limitation, and no such limitation is warranted.

The Court's injunction requires the White House to "immediately" provide ASL interpreters at "*all* publicly announced White House press briefings," with no carveout or exception for press briefings scheduled with less than 24 hours' notice. ECF 29 at 25 (emphasis added). Indeed, the Court found that the exclusion of deaf Americans from real-time access to press briefings on "natural disasters," "war," "military strikes," and "a global pandemic" creates irreparable harm. *Id.* at 2, 21. Those are precisely the kinds of emergencies that may prompt

---

[2] After reviewing the Notice filed on Friday, November 7 (ECF 32), undersigned counsel for Plaintiffs requested a meet and confer with counsel for the White House, and a call was conducted earlier this afternoon. The parties began discussing the issues addressed herein, but so far have been unable to resolve or narrow the issues in dispute.

2

same-day or short notice press briefings. Omitting ASL interpretation from such briefings would thus perpetuate the same exclusionary harm the injunction was designed to prevent.

In opposing the motion for preliminary injunction, the White House never argued that it would be logistically difficult or infeasible to provide ASL interpreters on less than 24 hours' notice. This argument does not appear in Defendants' opposition brief (ECF 18) and, as the Court observed, "when given the opportunity, the defendants declined to argue that providing ASL interpretation would entail any practical burden." ECF 29 at 19 (citing ECF 25 at 59-60). This led to the Court's finding that "defendants do not challenge the feasibility of providing ASL interpretation of press briefings by qualified interpreters . . . they have not submitted evidence of any feasibility challenges in doing so." *Id.* at 24. That should be the end of the matter.

Nevertheless, the White House now alludes to certain undefined "practical and logistical difficulties" that may arise in complying with the injunction order as written. ECF 32 ¶ 4. Respectfully, this is too little too late. The White House was given multiple opportunities to present evidence of such purported difficulties and they repeatedly failed to do so. Even now, the White House cannot identify what "difficulties" may arise and why they cannot be overcome. The Court should reject this meager attempt at reconsideration of the injunction order, disguised as a "Notice of Compliance" with that same order.

Moreover, overwhelming evidence establishes that the White House can feasibly provide ASL interpreters for press briefings on less than 24 hours' notice, even in emergency situations. The *NAD I* Court's 2020 injunction mandating ASL interpreters for all White House Press Briefings addressing the coronavirus pandemic did not include any carveout or limitation for briefings scheduled on short notice. Order, ECF 22, *NAD v. Trump*, No. 20-cv-02107 (D.D.C. Sep. 23, 2020). Likewise, the White House's ASL policy in effect from April 2021 through 2024

3

applied to *all* press briefings without exclusion of briefings scheduled on short notice. ECF 1-1. Consistent with that policy, the White House—for years—regularly provided ASL interpreters for all press briefings, including those that were announced mere hours before they occurred. *See* **Exhibit A**, Example 1 ("Remarks by President Biden on Maintaining a Resilient Banking System" announced at 7:55 a.m. ET and delivered at 9:00 a.m. ET on March 13, 2023); *id.*, Example 2 ("President Biden Delivers Remarks on the United States' Response to Recent Aerial Objects" announced at 1:04 p.m. ET and delivered at 2:00 p.m. ET); *id.*, Example 3 ("President Biden Delivers Remarks on the Collapse of the Francis Scott Key Bridge" announced at 12:37 p.m. ET and delivered at approximately 12:55 p.m. ET).

Further confirming the feasibility of providing ASL interpreters for emergency-related press briefings, state governors regularly provide ASL interpreters for emergency-related press briefings on things like hurricanes, wildfires, and other public health crises—which require scheduling on short notice. *See* **Exhibit B**, Example 1 (Gov. Green press conference regarding Maui wildfires); *id.*, Example 2 (Gov. Newsom press conference regarding Tropical Storm Hilary and earthquakes); *id.*, Example 3 (Gov. Landry press conference regarding Hurricane Francine); *id.*, Example 4 (Gov. Cooper press conference regarding recovery from Tropical Storm Helene); *id.*, Example 5 (Gov. DeSantis press conference regarding Hurricane Milton); *id.*, Example 6 (Gov. Youngkin press conference regarding flooding and a winter storm); *id.*, Example 7 (Gov. Abbott press conference regarding Texas flooding); *see also* State of Florida, Division of Emergency Management – Contract (ECF 127-12), *Yelapi v. DeSantis*, No. 20-cv-00351 (N.D. Fla. Oct. 18, 2022) (Florida contracts requiring ASL interpretation vendors to "provide ASL interpretation services in response to an emergency or disaster event . . . on short notice and at any location within the awarded region").

The White House roots its newfound 24-hour limitation in a "blanket purchase agreement" for ASL interpretation services that purportedly "requires the White House to give 24 hours' notice to the vendor for any requested services." ECF 32 ¶ 2. Again, this is too little too late. The White House never mentioned this agreement in opposing the motion for preliminary injunction, even though it has apparently been in place for some time. *See id.* (stating the White House "continues to retain" ASL interpretive services through this "agreement"). The White House also chose not to attach the agreement to its Notice, and has since declined to provide a copy to Plaintiffs, despite undersigned counsel's repeated requests. Without a copy of the purported agreement itself, the Court should not credit the White House's arguments.

Moreover, even if the agreement existed exactly as the White House describes, there is no basis to modify the injunction to conform to it. The White House's procurement practices should conform to the Rehabilitation Act and to this Court's orders—not the other way around. The White House is not limited to using a particular vendor contract already in place; it could seek an amendment to that contract and/or solicit new contracts. It could also hire its own ASL interpreters and/or use remote interpreting with picture-in-picture technology, as the White House did in the past. *See* The Daily Moth, *Interview with Former White House CDI Elsie Stecker*, (Jan. 28, 2025), https://www.dailymoth.com/blog/interview-with-former-white-house-cdi-elsie-stecker (last accessed Nov. 10, 2025); CBS News, *White House Hires Full-Time ASL Interpreters for First Time: "I'm Here for the Deaf Community,"* (Mar. 29, 2022, 11:36 AM EDT), https://www.cbsnews.com/news/white-house-hires-asl-sign-interpreters-deaf-community/ (last accessed Nov. 10, 2025). There are myriad ways for the White House to comply with the preliminary injunction.

Finally, before the administration change, outgoing White House officials left behind detailed guidelines on how to continue ASL interpretation for White House events, including press briefings. *See* ECF 1 ¶ 45. As Elsie Stecker, a Certified Deaf Interpreter (CDI) and former White House staff interpreter, explained earlier this year:

> Well, [i]t's up to the Trump administration on whether they'll bring in an [ASL] interpreter. I do not know. What I can share is that we've already developed guidelines and an internal structure for interpreting services, including how to make a request from vendors, along with specifications from them. We also developed an internal policy for ASL interpreting, along with best practices for large events where a CDI should be provided. We also developed best practices for press briefings and what we should expect from contractors and how we can support them. The guidelines are complete and it's "gold." The packet of information has been available since August [2024] and it includes everything needed to make their events accessible for everyone.

*Id.* Accordingly, the White House can simply look to internal guidelines already in its possession on how to provide ASL interpretation at press briefings, including those convened on short notice.

In sum, the injunction order means what it says: the White House must restore the *status quo ante* by immediately providing ASL interpreters for all press briefings, including those scheduled with less than 24 hours' notice.[3]

### III. The Injunction Covers All Presidential And Press Secretary Events Open To The Press

Even rose, the White House also seeks to limit the definition of "press briefings" in a way that may drastically limit the scope of the injunction. In particular, the White House states that it "interprets" the injunction to apply only to events "the exclusive purpose of which is for the

---

[3] The White House has given no indication that it intends to procure more resources—*i.e.*, additional contracts with ASL interpretation vendors and/or its own staff ASL interpreters—to enable it to comply with the Court's preliminary injunction order as written. Nevertheless, if the White House does so, Plaintiffs would be amenable to a modest stay (*e.g.*, to Nov. 24, 2025) solely with respect to the 24-hour notice aspect of the White House's compliance with the injunction.

6

President or Press Secretary to provide information to the press or take questions from the press," which the White House contends does not include "ceremon[ies]" or "speech[es], at which the President may choose to take questions from the press." ECF 32 ¶ 3.  In follow up correspondence to undersigned counsel, the White House clarified its position to state that events which are not announced as a press briefing or a press conference are not covered by the injunction's terms.  This construction is unduly narrow, inconsistent with the Court's opinion and order, and unworkable.

As an initial matter, it bears emphasis that the Rehabilitation Act prohibits discrimination in "any program or activity" conducted by the White House, 29 U.S.C. § 794(a)—including *all* types of press briefings.  Defendants have never argued otherwise.  Nor could they, as the Executive Office of the President's own regulations state that "a federally conducted program or activity is, in simple terms, anything a Federal agency does." 53 Fed. Reg. 25872, 25873 (July 8, 1988).  Accordingly, there is no dispute that the Rehabilitation Act applies to any White House press briefing, even if not specifically denominated as such.

Further, the Court's injunction order does not narrowly define or limit the meaning of the term "press briefings," and in this manner is consistent with both the *NAD I* Court's 2020 preliminary injunction order and the White House's prior ASL policy.  This Court's injunction simply requires the provision of ASL interpreters at "all [i] publicly announced White House press briefings [ii] conducted by the President or White House Press Secretary [iii] that are captured by White House communication channels." ECF 29 at 25.  The injunction is thus extremely similar to the *NAD I* Court's 2020 injunction order, which—aside from limiting the subject matter to the coronavirus pandemic—defined press briefings as those (i) conducted by the President, Vice President, or Press Secretary, (ii) that involve advanced notice, (iii) that take place on the grounds of the White House or any federal agency, and (iv) that are captured by the White House

7

Communications Agency (WHCA).  Order, ECF 22, *Nat'l Assoc. of the Deaf v. Trump*, No. 20-cv-02107 (D.D.C. Sep. 23, 2020).  Likewise, the White House policy in effect from April 2021 through 2024 defined "briefing" as "an event open to the press," and included the same elements of advance notice and capture by the WHCA.  ECF 1-1 at 1 n.2.

The Court should reject the White House's proposal to limit the injunction to apply only to Presidential or Press Secretary engagements with the press specifically announced as "press briefings" or "press conferences."  This limitation elevates form over substance and would allow the White House to end-run the injunction through the simple expedient of avoiding the words "briefing" or "conference" in is announcements.  While events formally announced as "press briefings" that occur in the Brady Briefing Room would plainly be covered by the injunction, that is not the only way the President addresses the press on the myriad issues discussed in the Court's opinion—such as "war, the economy, . . . healthcare," "natural disasters, federal military and law enforcement deployments in cities around the country, military strikes across multiple continents[,] . . . the passage of major legislation that impacts Medicare and Medicaid, and an ongoing government shutdown." ECF 29 at 2, 21.  The President regularly address these topics to the press in a variety of formats—sometimes through events formally labeled as "press briefings" or "press conferences," and sometimes through events labeled as "announcements," "remarks," or "addresses."  The preliminary injunction's reference to "press briefings" covers all such engagements with the press, regardless of the White House's label for any particular briefing.

For example, on November 6, 2025, the President appeared in the Oval Office, accompanied by a number of other government officials, and spoke directly to the White House Press Pool (who had been previously notified of the event) regarding important new developments on drug prices.  *See* The White House, *President Trump Makes an Announcement*, Nov. 6, 2025,

8

https://www.youtube.com/watch?v=oh3VhNzivS8 (last accessed Nov. 10, 2025). The President and other officials gave remarks for approximately 73 minutes, and then took questions from the press for approximately 27 minutes. *See id.* While this event was described as a Presidential "announcement," it plainly was a briefing to press that fits comfortably within the scope of the Court's opinion and order. Yet, it would be excluded under the White House's limited definition.

Because the President's engagement with the press is not always labeled as a "press briefing" or "press conference," excluding these types of briefings from the injunction's scope would unduly limit the number of Presidential press briefings interpreted into ASL. Indeed, if the White House's "exclusive purpose" limitation were adopted, the following additional press briefings would not be within the scope of the injunction:

- On March 26, 2025, the President announced increased tariffs on the auto industry via "remarks" given to press who were assembled in the Oval Office. The White House, "President Trump Delivers Remarks on Auto Tariffs" (Mar. 26, 2025) *available at* https://www.youtube.com/watch?v=dCll85s5V3w (last accessed Nov. 10, 2025). The President spoke for approximately 32 minutes and took questions for approximately 14 minutes.

- On June 21, 2025, the President delivered an "Address to the Nation" to press assembled in the White House to announce that the United States military had carried out strikes on nuclear facilities in the Islamic Republic of Iran. The White House, "President Trump Delivers Address to the Nation" (June 21, 2025) *available at* https://www.whitehouse.gov/videos/president-trump-delivers-address-to-the-nation-june-21-2025/ (last accessed Nov. 10, 2025).

- On September 22, 2025, the President made an "Announcement on Medical and Scientific Findings for America's Children." in which he address potential links between Tylenol and autism. He addressed press assembled in the White House's Roosevelt Room, and was joined by the Secretary of Health and Human Services, the Director of the National Institutes of Health, and the Director of the Centers for Medicare & Medicaid Services, among others. The President and these officials addressed the press for approximately 50 minutes and took questions for approximately 14 minutes. *See* The White House, "President Trump Makes an Announcement on Medical and Scientific Findings for America's Children," *available at* https://www.whitehouse.gov/videos/president-trump-makes-an-announcement-on-medical-and-scientific-findings-for-americas-children/ (last accessed Nov. 10, 2025).

- On October 8, 2025, the President announced a "very serious left-wing terror threat to" the United States. The White House, "President Trump Participates in a Roundtable on ANTIFA" (Oct. 8, 2025) *available* at https://www.youtube.com/watch?v=Cf6Em35gguU (last accessed Nov. 10, 2025). The White House termed the event a "roundtable." The President took questions from the press for approximately 17 minutes.

Exclusion of these press briefings would be inconsistent with both the Court's opinion and the broad reach of Rehabilitation Act, which again applies to "*any* program or activity" conducted by the White House, regardless of its label.

The Court's injunction is designed to ensure access to Presidential *communications*, not to particular event formats. Whenever the President or Press Secretary communicates with the press and the public through official White House channels, the same accessibility obligation arises regardless of whether the event is styled a "briefing," "conference," "remarks," or "announcement." Accordingly, the Court should reject the White House's proposed "exclusive purpose" test and affirm that the injunction is not limited to briefings specifically denominated as "press briefings" or "press conferences." If the Court believes it appropriate to add a definition of "briefing," Plaintiffs submit that the Court should use the simple, objective definition that appeared in the prior White House ASL policy—namely, "an event open to the press." ECF 1-1 at 1 n.2.

\*   \*   \*

Plaintiffs submit that the foregoing disputes as to the scope of the injunction can and should be resolved in Plaintiffs' favor on the present record. Neverhtless, to the extent the Court disagrees, Plaintiffs would respectfully request that the Court (a) grant Plaintiffs leave to conduct expedited discovery on either or both of these two disputed issues (the 24-hour notice requirement and the definition of "press briefing") and set a briefing and hearing schedule to resolve them, and (b) direct the White House to immediately comply with the preliminary injunction in all respects other than as to those disputed issues.

| | |
|---|---|
| Dated: November 10, 2025 | /s/ Ian S. Hoffman |

Ian S. Hoffman (D.C. Bar No. 983419)
Alex E. Sirio (D.C. Bar No. 1724703)
Samuel D. Kleinman (D.C. Bar No. 1736463)
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Fax: (202) 942-5999
ian.hoffman@arnoldporter.com
alex.sirio@arnoldporter.com
sam.kleinman@arnoldporter.com

Caitlyn Lewis Kellerman
ARNOLD & PORTER
  KAYE SCHOLER LLP
250 W 55th Street
New York, NY 10019
Telephone: (212) 836-7751
caitlyn.kellerman@arnoldporter.com

Brittany Shrader (admitted *pro hac vice*)
Drake W. Darrah (admitted *pro hac vice*)
Alexander Van Hook (admitted *pro hac vice*)
NAD Law and Advocacy Center
8630 Fenton Street, Suite 202
Silver Spring, MD 20910
Telephone: (301) 587-1788
Fax: (301) 587-1791
brittany.shrader@nad.org

*Counsel for Plaintiffs*