**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

NATIONAL ASSOCIATION OF THE
DEAF, *et al.*,

      *Plaintiffs*,

   v.

DONALD J. TRUMP, *et al.*,

      *Defendants*.

Civil Action No. 25-01683 (AHA)

---

## Order

On November 4, 2025, this court issued a preliminary injunction that requires the relevant defendants to "immediately begin providing a simultaneous and publicly accessible feed with visible American Sign Language interpretation by a qualified interpreter for all publicly announced White House press briefings conducted by the President or White House Press Secretary that are captured by White House communication channels." ECF No. 29 at 25. Consistent with the court's order, those defendants filed a notice apprising the court of their compliance. ECF No. 32. In their submission, the defendants also sought to confirm their understanding of two aspects of the court's injunction. *See* ECF No. 32 at 3 (requesting "notification from the Court if the White House has misunderstood the intended scope"). The court gave the plaintiffs a chance to respond, ECF No. 34, and held a hearing to further understand the issues raised. The court construes the defendants' submission as a motion for clarification and grants the motion as set forth below.

The defendants first asked whether the term "publicly announced" allows them to forgo providing ASL interpretation for deaf Americans when a press briefing is not "scheduled at least 24 hours in advance." ECF No. 32 at 2. When prompted to explain this interpretation—namely,

that the defendants need not make any effort whatsoever to arrange ASL interpretation if they give only 23 hours' notice—they clarified they were concerned about instances in which they had only "a moment's notice" or "potentially 30 minutes' notice." Draft Morning Hr'g Tr. at 3–4, 6–11 (Nov. 13, 2025). They explained that, in a circumstance where they could not arrange simultaneous ASL interpretation before a briefing was set to begin, they would "absolutely make a good-faith effort at substantial compliance," and expressed concern about a scenario in which a briefing "might not be able to go forward because they cannot find an ASL interpreter." *Id*. at 9–10.

The court explained, first, that the defendants' concern was based on a misunderstanding: nothing in the preliminary injunction requires the government to delay press briefings. *See id*. at 4–5, 8–9; *see also id*. at 15–16 (eliciting the same understanding from plaintiffs' counsel). And the court explained, second, that in the event the defendants are not able to provide ASL interpretation because a press briefing takes place on a moment's notice, a showing that they took all reasonable steps to do so—the showing the defendants indicated they would be prepared to make—is what the court will require. *Id.* at 8–9, 11; *cf. Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1017 (D.C. Cir. 1997) ("In order to prove good faith substantial compliance, a party must demonstrate that it took all reasonable steps within its power to comply with the court's order." (cleaned up)). The court confirmed this understanding of the injunction with both parties. *See* Draft Morning Hr'g Tr. at 9, 11, 16–17. To reflect this collective understanding and avoid any doubt, the court clarifies that the injunction requires the defendants to take all reasonable steps to provide ASL interpretation in the circumstances described.[1]

---

[1]    The defendants' request that ASL interpretation be required only for press briefings announced at least 24 hours in advance apparently stems from an existing vendor agreement, in which the defendants are expected, by default, to provide 24 hours' notice. ECF No. 32 at 2. The defendants have not provided a copy of the referenced agreement in the record, during the preliminary

The defendants second ask the court to further define the types of events for which they must provide ASL interpretation for deaf Americans. ECF No. 32 at 2. The court understands this as a genuine effort to have clear guidance, and it heard submissions from both parties to that end. At the hearing, the parties agreed the defendants must provide ASL interpretation for events conducted by the Press Secretary or President that are labeled as "press briefings" or "press conferences." Draft Afternoon Hr'g Tr. at 2–3, 10–11 (Nov. 13, 2025). Recognizing that labels alone cannot control, both parties also proposed descriptive definitions of "press briefings," but they were unable to reach agreement on that language. In the interest of ensuring the parties have clear guidance, the court instructed that it would take the parties' submissions on this point under advisement and issue further guidance separately. *Id.* at 19. The court now grants the defendants' motion to clarify on this issue as follows:

The court finds the plaintiffs' understanding of what counts as a "press briefing" is broader than justified at this preliminary stage. In writing, the plaintiffs argued the preliminary injunction applies with the same scope as the White House's prior ASL policy—namely, to any event "open to the press." ECF No. 34 at 10 (quoting ECF No. 1-1 at 2 n.2). Although the defendants have not made any showing that providing ASL interpretation for such events would pose difficulties in terms of feasibility, the court finds this proposal exceeds the scope of the plaintiffs' showing, at least at this stage. *See* ECF No. 29 at 24–25.

---

injunction briefing or thereafter. The defendants do not explain how that agreement could have dictated the scope of the court's injunction or their obligations under the Rehabilitation Act. Unrebutted evidence in the record indicates that prior administrations have regularly provided ASL interpretation on much shorter timeframes. *See* ECF No. 34-1. And at the hearing, the defendants confirmed that even their existing agreement contemplates requests that are made "in less time." Draft Morning Hr'g Tr. at 12.

The court also finds the defendants' understanding too narrow. According to the defendants, they are required to provide ASL interpretation only at events whose "exclusive purpose" is "for the President or Press Secretary to provide information to the press or take questions from the press." ECF No. 32 at 2. At the hearing, it became clear this understanding is unworkable. Draft Morning Hr'g Tr. at 23–24. For example, under this interpretation, if the President planned to pardon a turkey at the start of an event that, by all other markers, is a press briefing and to then provide information and take questions from the press on pressing issues from war to the economy to healthcare, no ASL interpretation would be required for any part because briefing the press was not the "exclusive purpose." *Id.* at 20–21 (defendants accepting that their position, taken seriously, would lead to this "strange" result). That cannot be squared with the court's preliminary injunction, which was premised on the Rehabilitation Act's requirement of meaningful access to this type of direct engagement with the public. *See* ECF No. 29 at 17–22.

At the hearing, it became apparent the defendants' principal concern is that the President might choose to take questions from the press during an event that was otherwise not expected to be a press briefing. *See* Draft Morning Hr'g Tr. at 21–22, 24, 28–29 (raising this concern).[2] The court appreciates the possibility of such spontaneity and agrees the preliminary injunction does not require ASL interpretation in such circumstances. In response to this concern, the plaintiffs substantially narrowed their proposal to require ASL interpretation "where it is reasonably expected that the President or press secretary would provide information directly to the press or take questions from the press." Draft Afternoon Hr'g Tr. at 3–4. This language is similar to that adopted by Chief Judge Boasberg in *National Ass'n of the Deaf v. Trump*, No. 20-cv-2107, 2020

---

[2]    In their written submissions, the defendants otherwise offered only a conclusory reference to "practical and logistical difficulties" that could arise, without further explanation or evidence the court could meaningfully assess or rely upon. ECF No. 32 at 3.

WL 5757463, at *1 (D.D.C. Sept. 23, 2020). The court agrees this language would address the defendants' concern; however, in the interest of providing the clearest guidance for all parties, the court further limits its injunction to events for which the relevant defendants have knowledge that the President or Press Secretary plans to provide information to the press or take questions from the press. The defendants have not made any submissions, in writing or orally, that would justify failing to take all reasonable efforts to provide ASL interpretation when they have knowledge of such a plan to brief the press.

The court accordingly amends its preliminary injunction as follows:

- The Executive Office of the President, White House Office, White House Chief of Staff, and White House Press Secretary shall immediately take all reasonable steps to provide a simultaneous and publicly accessible feed with visible American Sign Language interpretation by a qualified interpreter for all publicly announced White House press briefings conducted by the President or White House Press Secretary that are captured by White House communication channels.

- For the purposes of this order, "press briefings" includes (1) events that the White House publicly announces as press briefings or press conferences; and (2) events for which the enjoined defendants have knowledge that the President or Press Secretary plans to provide information to the press or take questions from the press.


_____

AMIR H. ALI
United States District Judge

Date:   November 17, 2025